The first case for oral argument is Moya v. United States 19-10-02. Counsel Good morning and may it please the Court. I am Christopher Lamb and I represent the appellants. The District Court erred in holding that plaintiffs in this case cannot seek court intervention to fix a badly broken system for determining who receives waivers of the English and civics tests for naturalization. The District Court's first and perhaps clearest error was holding that the organizational plaintiffs did not have zone of interest standing. The Supreme Court has been clear that the zone of interest test is not especially demanding. In fact, the Supreme Court has always stressed that the interest sought to be protected by the plaintiffs need only be arguably within the zone of interest protected by the statute or constitutional guarantee in question. The Supreme Court put it this way in Clark v. Security Industries Association. The test denies a right to review if the plaintiffs' interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. That's 479 U.S. at 399. Applying the standard, the Ninth Circuit in the East Bay case, and numerous District Courts, including Judge Garifas in the Eastern District in the Batilla-Vidal case, have held that immigration advocacy organizations have zone of interest standing to challenge statutory and constitutional violations in the provision of benefits under the Immigration and Nationality Act. So would any law firm that has a major immigration practice meet the zone of interest test? Well, any organization whose purpose is to help individuals receive the benefits of the Act is clearly within the zone of interest. The Immigration and Nationality Act is full of provisions that bring such organizations into the very scheme of the statute, which is something that the Ninth Circuit stressed in East Bay. And the organizational plaintiff here, Youth Ministries for Peace and Justice, is an organization that assists people with the naturalization process. I'm sorry, but do I understand your answer to Judge Carney's question is yes? Any or any, not necessarily a private law firm that exists. A law firm is an organization. It does pro bono work that they are required to, honor-bound, ethically bound to do it. They represent people who can't afford services and immigration, tax issues, all sorts of things. Well, certainly. And they might. But here we have an organization... Doesn't that prove too much? Well, but it doesn't necessarily prove too much because our organization is a private law firm. You see, if I'm a lawyer representing a client and I'm having difficulty winning, it would be nice as a law firm, which I think is the implicit, underlying implicit question, to challenge the system under which I am not prevailing with some of my clients. Well, indeed. But as I said to Judge Carney, this statute, the INA, specifically incorporates the notion that community organizations and not-for-profit organizations are going to be integral to the provision of benefits through that statute. Well, that goes to the zone of interest. I think Judge Carney's question is really going to Article III standing, which is how is a law firm harmed if its clients are not willing to win? Well, I mean, this isn't a law firm, right? This is a community organization with a Department of Justice-accredited lay representative. But as far as Article III standing... Well, a law firm wouldn't have the same kind of diversion of resources issue that a non-profit organization whose purpose was congruent with the statute's purpose would. Well, exactly right. And that, of course, particularly goes to the Article III issue, Your Honor. And quite clearly, if we look at the Supreme Court case law havens, if we look at the case law of this circuit, whether it's the Central de la Comunidad case or the INEBE versus Dow's case or NYCLU versus New York Transit, they all stand for the same proposition, which is when you're dealing with a not-for-profit organization and there's a diversion of resources, Article III standing test is met. But your mission is to help people with obtaining citizenship. Absolutely. So why are you diverted from doing that? Sometimes it's easier and sometimes it's harder. Sometimes clients have bigger problems than at other times. But that's still your mission. Well, indeed. You're not being diverted from your mission. You're performing your mission, which is an admirable mission, but you're not being diverted from it. No. But we're diverting resources to deal with a difficulty that's created by the defendants through their violation of law. And the — what Your Honor seems to be suggesting is that there's some validity to defendants' notion that you have to — that diversion has to be away from the core mission. But that's simply not what the case law says. There was no diversion in Havens from the core mission of the housing organization. There was no diversion from the core mission in Centro de la Comunidad. The core mission was to organize workers. They were still organizing workers. It was harder because the statute in question — that the aliens would congregate in one place in a park. And the town didn't want a lot of aliens congregating in their park, so they were dispersing them by a law dealing with solicitation from automobiles and trucks. Sure, but — And therefore they — Centro alleged — and I don't ultimately know what happened, but they alleged that they then had to hunt down and find the people who had previously been gathered together for them to help them. Sure. But they were engaged in the same mission either way. And in the hypothetical you put to me a moment ago, the question was, well, if it's just harder to engage in the core mission, where's the diversion? And the answer is provided in Centro, and it's the same as it is here. The diversion is they're able to do less of the core mission because it's taking them longer because the government is violating the law. And that's the injury for Article 3 purposes. Hypothetical. Let's say that somebody establishes a storefront pro bono group to help people do their taxes, which of course is actually very helpful from an immigration point of view. And the tax laws are very complicated. They're really complicated, and it's hard to comply with this or that, and it's hard to get all the documents together. And if the tax laws were simplified, that group could perform its mission with a lot less sweat. Sure, Your Honor, but that's different. Why? It's different because here there's a violation of law that's being challenged. The fact that the tax law is complicated may be regrettable, but it's not a violation of law. The problem here is the government is making it more difficult. But you're arguing the merits, and I'm arguing Article 3 standing, and that is to say would the storefront pro bono tax clinic have standing to say that the tax law is so complicated that it, and indeed it is unbelievably complicated, and it would mean that it takes a lot longer to serve each client. Well, of course, they would have standing to challenge an illegality that was making it more burdensome. But you're going to the merits. Well, Does it make a difference that this statute specifically and explicitly contemplates the participation of pro bono organizations supporting alien applications in a way that the tax law maybe doesn't? It absolutely does, Your Honor. I see my time is up. You can take a little more time. Okay. How does that affect Article 3 standing? I mean, that would affect, I would think, that would affect prudential standing, but I'm not sure it affects Article 3 standing, which is much more fundamental. Well, it's much more fundamental, but of course, the district court found Article 3 standing. I know that. It's on the law of Havens. That's why we're here on appeal. Well, the fact is the government didn't appeal that. But on the law of Havens, they're challenging standing. Well, sure, but they didn't file notice of appeal. They didn't cross appeal. But the fact is, on the law of Havens in Centro, in NYCLU, there is absolutely Article 3 standing here. And what this Court said in NYCLU is that only a perceptible impairment of an organization's activities is necessary for there to be injury in fact. I mean, that's the law in this circuit. Judge Park, did you have a question? I just want to ask quickly about administrative exhaustion. You're not disputing that you didn't, your clients didn't exhaust their administrative remedies, it's that they didn't have to under McNary? I just want to make sure that's right. Exactly right. I mean, under the McNary decision, and under the cases following McNary in this circuit, Abdullah and Malik, there is a cause of action for pattern and practice claims against INS. And it doesn't require exhaustion. You can't exhaust remedies through the Immigration Act to challenge a pattern and practice. And, of course, why MPJ can't, because they don't have a denied application. We're not seeking review of a denied application. We're seeking to challenge the pattern and practice of failing to comply with the congressional mandate that these waivers be provided. And that, under McNary, under CSS versus Reno, under Abdullah and Malik in this court, is permitted without any resort to administrative remedies. Is there anything that prevents the district court on appeal after exhaustion from addressing systemic, your systemic challenges? Yes and no. And what I mean by that is, under 1421C, that's not actually before the court. The only thing that's before the court under 1421C is specifically the appeal of the determination to deny naturalization. And at that point, because it's a de novo review, it doesn't matter whether it was a bad process below. It doesn't matter if notices were properly provided. But 706 says that the reviewing court can decide all relevant questions of law and interpret constitutional and statutory provisions. But doesn't that kind of open it up? Well, and the district court could under general federal question jurisdiction. But that's the same reason why we can now. Because under general federal court jurisdiction, federal question jurisdiction, these pattern and practices can be challenged. And that's exactly what the Supreme Court held in McNary. What more would you have to do to exhaust administrative remedies to take this issue off the table? Well, first of all, the individuals would have to go to two interviews and be denied. Then there'd be an administrative appeal. That would have to be denied. And then they could go to district court on the de novo review. YMPJ, of course, can't pursue that course. But when they got to district court on de novo review, a district court could. What's to stop the individual plaintiffs from doing that, though? I mean, your argument seems to be that you see no point in it and it's not legally required, which I understand. Nothing is to stop them from doing that. I do think that it's possible that a district court would not entertain the kind of discovery that would be needed to approve the pattern and practice because the district court would say that the issues are narrower than that. But of course, we don't know. But what we do know is that it isn't required because this is a pattern and practice challenge. There were more individual plaintiffs when this suit was originally filed. Yes, that's right. There were about 10 more. There were there were nine altogether. So there were seven more. And they they dropped out. They didn't drop out. They became citizens. They became citizens because I don't see how it can. I mean, well, you're saying that the system is is flawed. And yet seven out of the nine plaintiffs are now citizens of the United States. Congratulations to them. But that doesn't mean that the system is broken, does it? Well, of course, that goes to the merits, not to whether we state a claim, Your Honor. But but the fact is, those seven had to sue. They didn't just become citizens. They sued. And after they sued, the government looked at their cases again and realized error. And so it really proves the merits of our case, Your Honor. So they became citizens through some route other than the one prescribed in the law that you were attacking. Your Honor, they came to special attention of the U.S. Attorney's Office and their client then looked carefully at those cases and realized that, in fact, they were eligible. Well, they were eligible. But that wasn't that was not the determination without this litigation, Your Honor. That was only the determination once they came forward and challenged this very flawed system. Well, you have two minutes of rebuttal. Thank you very much, Mr. Son. And I gave the appellant extra time. So feel free to take an extra four. Good morning, Your Honors. May it please the Court. Anthony Son from the Southern District of New York on behalf of defendants appellees. And Your Honors have hit on the key point in this case. The statutory scheme at issue provides for numerous express remedies for those seeking to naturalize who believe there was something wrong with the naturalization decision. There's the administrative appeal process, which allows the agency to correct their errors if, in fact, the appeal is properly taken. But that doesn't allow correction of systemic error. In and of itself, it may not, but certainly there's not. Well, in and of itself is what it is. It is in and of itself. Well, certainly, Your Honor, I would point out that in any individual's case, if an error is identified, an agency has the capability to then apply it to other cases in which it believes that a systemic issue exists. Whether or not an individual in a particular case raises it and establishes it, that is a question, depending on the case. That would be if they failed going through the process, went to district court, and then got a judgment the government would have to comply with that judgment across the board. Certainly that would be one way. There's nothing that prohibits them in the administrative appeal process from claiming that it was unconscious, it was denied because the reviewing officer ignored the medical evidence, and upon further administrative review, you should look at it again and change it. In fact, to clarify what happened with the other seven, these seven plaintiffs who are no longer here on appeal, as we always do in the process of litigation the parties discuss, bear in mind that I think with one exception, none of them had actually filed the administrative appeal. So it was special arrangement. It was not a special arrangement so much as they didn't take advantage of the administrative process, but in the course of litigation we decided to essentially give them their administrative appeal, and the agency looked at it again. Had they gone through the process, again, we don't know exactly what would have happened, but they would have had the opportunity to have it examined again. Again, barring success in the administrative process, they have an express statutory right to go to district court with full discovery and de novo review with no deference to the administrative statute. Sotomayor, I'm sorry, full discovery as to the systemic issues that are being raised in this case. Well, certainly it would be subject to whatever limitations of proportionality in Rule 26, but there's no express statutory limit. And objections. Correct. So, I said, Your Honor, because there is an express statutory remedy, an express right to review, as this Court has already held in many cases, when there's exclusive statutory remedy, there's no need to imply an alternative remedy. The whole point of this process that is set forth in the statute is to give the opportunity to the agency to correct its errors. And because that was not done here, the individuals cannot sue on these grounds. If I may turn to you, it wasn't the case. Could you address the organizational standing issue, please? Certainly. Yeah. I'm concerned about that you've challenged Article III standing. The district court found the organization had Article III standing, and the statute does seem in several different provisions to contemplate a role for pro bono organizations such as that represented by your adversary here. And we've found in several circumstances that it's really a relatively low burden, a light burden to carry to show that a mission's core focus, when it's aligned with a statute, can suffer an injury by having a diversion of resources such as is alleged here. So explain to me why that isn't enough. So, Your Honor, if I may unpack that in two parts, because I think diversion of resources is Article III versus statutory being zone of interest. So addressing the zone of interest question first. Yes, but in looking at the diversion of resources, I think it makes a difference whether the statute that is at issue contemplates the participation of individual organizations. Otherwise, it's the law firm problem. So, Your Honor, and as we set forth in our brief, to be clear, while perhaps not as complicated as the tax code, the INA Title VIII of the U.S. Code is vast, complex, has numerous provisions. And so the provisions at issue here have to do with the naturalization provisions. How does one become naturalized? What the requirements are? What the waivers are? There's also other provisions, as Your Honors are aware, asylum, removal, special visas, et cetera. So with respect to naturalization, there is the one provision they've pointed to which allow, which encourages organizations to propagate information about the benefits of naturalization. This is distinct from, however, the other provisions in the INA dealing with, for example, asylum, which expressly talk about the same statute. Why should we segregate the naturalization from the asylum portions of the INA? Well, Your Honor, it's simply a matter of what level of, I guess, specificity or generality we're talking about the zone of interest, right? The zone of interest here, the question is, did Congress intend for an organizational plaintiff to be able to sue for a violation of, in this case, 8 U.S. Code section 1423, the waivers of the civics and the English language test? And we submit, Your Honor, that given the structure of those provisions and given the structure of the express remedial scheme, both administrative and judicial review, set forth for the naturalization process, that it does not contemplate an organizational plaintiff suing. Mind you — But, Your Honor, I thought we were talking initially about Article III standing. Don't we have to start there and then we come to zone of interest? Does the statute contemplate the participation of the organization in this way? Why does it meet that minimal burden? But, first, I thought you were contesting whether the organization had any cognizable injuries sufficient to satisfy Article III. Certainly, Your Honor. I understood you to tell me to look at the statute for that purpose. But I'm looking at — but you came back to zone of interest, and so I wanted to make sure that we were talking about Article III standing. I thought that's what Judge — Yeah. I was asking. I think I might have diverted the questioning to Eastman. But it's — following up on Judge Park, though, I thought we looked at the statute as a whole and not look at individual provisions to determine whether the organization's interests were generally aligned with that to see if a diversion of resources was a cognizable injury sufficient to satisfy Article III. Is that incorrect? Certainly, that's not the way we have framed it, Your Honor. I confess — Oh, go ahead. I think it's kind of murky between the two. Just to focus directly on what would be — what is the alleged diversion of resources. The alleged diversion of resources by YMPJ is the presence of a DHA accredited representative at the interviews for applicants who need waivers. The very applicants who, as alleged, have some medical or disability that actually prohibits — that inhibits them from understanding English entirely or being able to learn civics in order to pass the test. And, Your Honor, there's no allegation here, actually, that somehow YMPJ's representative would not need to spend any more time on those who need waivers versus those who don't. In fact, it's inherent in the nature of the clientele that they serve that it's going to take more time to serve someone who needs more assistance than not. And that, in and of itself, is not a cognizable — I understand your officer's argument to be that because the requirement to learn English — because the agency will not accept a doctor's note that somebody cannot learn English and cannot learn the specifics necessary to pass the test, that that is not enough for a waiver. And that what the group has to do, what the organization has to do, then, is to accompany somebody to a test that they can't take and then assist them through a process of appeal and, as you've identified, go to a district court and maybe go through discovery there. So I'm not sure that's a diversion of resources, but that's an expenditure of resources, is it not? Certainly, it's an expenditure of resources, Your Honor, but in some sense, it's an expenditure of resources that's there no matter what the policy, because the whole reason for error correction, for example, is that we understand that no agency will be perfect. There will be mistakes made. That's why there's an appeal process. So unless the contention, Your Honor, is that any conceivable error, any conceivable inefficiency somehow confers standing on the third party, the organizational plaintiff, it seems very hard to draw the line where it is. Now, essentially, what we understand the plaintiffs to be alleging is that they think the process could be better, but a desire to make a process better for them, better for the clients, is not in and of itself sufficient to confer standing, particularly when the process that they are proposing, still, they're not proposing that there be perfect adjudication and never an appeal, right? They're simply saying that they believe that they could spend their time and they could more efficiently spend their time helping people if the process were more to their liking. Sotomayor, I think the idea is they could help more people. They're doing the same mission, but they could help more people if a doctor's letter was enough. Well, first of all, Your Honor, a doctor's letter is enough if the doctor's letter meets the requirements set forth in the statute. The problem with the doctor's letters for the two remaining plaintiffs is that in the did not establish the requisite nexus to establish eligibility for the waiver. In the cases of countless others who have not sued and for the seven who ultimately, upon further review, were naturalized, it was determined that the doctor's note was, in fact, sufficient. If this is in the record, what are the numbers of people who achieve waivers? Your Honor, I do not have that list on the record. I don't think it's in the record. I haven't seen it. On the merits, could you address the question that the forcing individuals to appear in person at naturalization interviews in order to learn whether their waiver requests are denied is a failure to accommodate in a cognizable way? Your Honor, this was not addressed in the briefing below. Our defense on the Rehabilitation Act is simply that they can't sue over this. I could give an off-the-cuff answer if you'd like, Your Honor, but... Well, if I was concerned about that aspect of the program from a systemic point of view, and that's part of what we're trying to address, is how systemic issues such as that can be raised. Certainly, the regulations do not require that they be given warning ahead of time that it will be denied. Given the workload of the agency, as a matter of practice, these are reviewed relatively close to the interview date, as I understand it. And it is the agency's view that the way in which they currently process these, they will review them and provide the decision when possible. I will point out, again, it's beyond the scope of this record. There have been some changes to the policies and procedures since this case was filed, some of which may or may not address those concerns. But those, again, are beyond the scope of this record. Are those available in the public record? They are. That is part of the policy manual that's available on the USCIS website, among other places. Thank you very much. On the Rehabilitation Act, one of your arguments seems to be that exhaustion is also ours to claim there. Is that right? Well, certainly, Your Honor. So, of course, our initial and our first argument is that there's simply no cause of action. But, however, if a cause of action is implied, given the nature of... I guess I'm flipping that. Do we have to reach the implied cause of action question if there's a failure to exhaust? Your Honors, could assume that there's implied cause of action, and then if there's a failure to exhaust administrative remedies, the case should still fail because the regulations promulgated pursuant to the Rehabilitation Act provide a remedial scheme by which they can file a complaint. There will be a final agency decision after an investigation, and then they can bring a suit after exhaustion of the administrative remedies. When you say they, you mean the individual plaintiffs, the organization? The organizational plaintiffs are not precluded from filing a complaint under the regulations either. Okay. Thank you. Could you expand on that? Could you say that one more time? Could you expand on that? You said the organizational plaintiff is not precluded from filing a complaint. An administrative... You mean in Federal court? What? Where? The regulations that were promulgated pursuant to the Rehabilitation Act that provide for a complaint to the officer of civil rights for the Department of Homeland Security alleging failures to accommodate, which could range from as simple as a ramp missing outside of a building up to something in the procedures. And are you saying an individual could do that through an organization, or are you saying that an organization itself on its own behalf could file a complaint that would receive respectful attention? I don't have the exact text here, but my recollection of the text is that not only can individuals but also organizations can file those types of complaints with the officer of civil rights. Yeah, because if it's only individuals, you're not likely to get too many of them. I understand, Your Honor. Very good. Thank you very much. Mr. Lam, you have a few minutes of rebuttal. All right. I have just a few points. First of all, my adversary erroneously suggested that there are not allegations in the complaint specific to the diversion of YMPJ's resources. I would direct the Court to paragraphs 179, 180, and 181 of the complaint. Which are very specific with respect to the diversion of resources. That the representative who works on these cases spends twice as much time on the cases involving N-648 waiver requests as others. And as we've already said. Isn't that really to be expected? I mean, you're dealing with, I mean, the ordinary thing is somebody would take the exam. Somebody would learn English or take an English exam. They're seeking a waiver. It involves medical application. Why? What's the basis of a claim of an organization should spend as much time on an extraordinary case, spend no more time on an extraordinary case than it spends on the ordinary case? Your Honor, the problem is what makes these cases extraordinary. And it's not just that they need the waiver. It's that the waivers are repeatedly denied and denied improperly. And that's part of what's causing the extra time expenditure. Your clients are losing. Pardon me? Your clients are losing. Right. And they're losing even though they've submitted waiver applications that are facially absolutely perfect. Facially perfect. Facially. That's the only thing. Is that good enough? In other words, look, let's be candid. There are plenty of doctors out there who would certify that I have a broken leg. And there are plenty of doctors who will certify to just about anything if they think it's appropriate to do that. So you're saying if the letter comes in and it seems to be facially okay, the person doesn't even have to show up. That's not, in fact, the person doesn't have to show up. In fact, that's not what we're saying. And the denials aren't on the basis of questioning whether the doctor is sincere or not. They're questioning whether or not Alzheimer's disease counts as a disability. And that's just obviously wrong. And this is a problem of training and it's a problem of poor guidance to the people who are making these decisions. And all of that could be improved if the agency wished to. And it should be improved because Congress intends these waivers to be provided. Can the agency deal with this by rulemaking, by adopting rules that obviate these problems? What the agency really needs to do is train its staff better and provide better guidance. No, no, no, no, I ask you a very specific question. Okay. I don't, I mean, from my experience as a lawyer doing administrative law for 30 years, regulations by themselves are not self-effectuating. You need to train your staff. You need to provide guidance to your staff. And that's what's failing here. You need to do two things. But so you're saying the regulations are fine. Is that it? The regulations are on their face fine. But the problem is there's a systemic failure to follow the regulations in the statute, Your Honor. Thank you. Thank you very much. We'll take the matter under advisement. The next case on the